UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNIE LAMAR KELLY,

    Petitioner,

-vs-                                              Case No. 8:10-CV-2622-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") challenging convictions for carjacking with a deadly weapon and aggravated battery entered by the Sixth Judicial Circuit Court, Pasco County, Florida (Dkt. 1). Respondent filed a response to the petition (Dkt. 19), and Petitioner filed a reply (Dkt. 22).

Petitioner alleges three grounds for relief in the petition: 1) there was insufficient evidence to support the carjacking conviction; 2) the trial court erred in admitting a knife into evidence over defense counsel's objection; and 3) the trial court erred in denying defense counsel's requested jury instruction that self-defense requires no duty to retreat.

## PROCEDURAL HISTORY

On October 6, 2005, Petitioner was charged by Information with carjacking with a deadly weapon, robbery, and aggravated battery (Respondent's Ex. 1, Vol. I at pp. 7-8). Following a jury trial on February 7 and 8, 2006, the jury found Petitioner guilty of the carjacking and


aggravated battery counts, and not guilty of the robbery count (Id. at pp. 132-34). Petitioner was sentenced as a prison releasee reoffender to life imprisonment on the carjacking conviction, and 15 years imprisonment on the aggravated battery conviction (Id. at pp. 142-47). The state appellate court affirmed Petitioner's convictions and sentences (Respondent's Ex. 5); *Kelly v. State*, 967 So. 2d 915 (Fla. 2d DCA 2007) [table].

Petitioner filed a *pro se* Motion for Post Conviction Relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 raising three grounds for relief (Respondent's Ex. 7). The state post conviction court summarily denied two grounds, and directed the State to respond to the remaining ground (Respondent's Ex. 12). After the State responded, and Petitioner replied, the state post conviction court denied the remaining ground for relief (Respondent's Ex. 15). The state appellate court affirmed (Respondent's Ex. 17); *Kelly v. State*, 34 So. 3d 10 (Fla. 2d DCA 2010) [table]. Petitioner's motion for rehearing and rehearing *en banc* (Respondent's Ex. 18) was denied (Respondent's Ex. 19).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court

decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). "Under § 2254(d), a habeas court must determine what arguments or theories supported. . .the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Wetzel v. Lambert*, 132 S.Ct. 1195, 1198 (2012) (citing *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of

procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence

rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

### Ground One

Petitioner contends that there was insufficient evidence to support the carjacking conviction.[1] Specifically, he argues that there was insufficient evidence establishing that the force Petitioner used on the victim was during the course of the taking of the vehicle. In other words, Petitioner argues that there was no nexus between the force and the taking of the vehicle.

Respondent argues that to the extent Petitioner attempts to assert a federal due process challenge to the sufficiency of the evidence, it is unexhausted and now procedurally barred because it was not fairly presented as a federal claim in the state courts (Dkt. 19 at pp. 11-16). Specifically, Respondent argues that on direct appeal, Petitioner argued that the evidence was insufficient under Florida's "circumstantial evidence rule," but did not argue a federal due

---

[1] In Florida, "[a] carjacking occurs when the state establishes the following three elements: '[1] the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, [2] with intent to either permanently or temporarily deprive the person or the owner of the motor vehicle, [3] when in the course of the taking there is use of force, violence, assault, or putting in fear.' §812.133(1), Fla. Stat. (1993)." *Young v. State*, 2013 Fla. LEXIS 2025, at *28-29 (Fla. Sept. 19, 2013).

process deprivation (Id. at p. 13). In his reply, Petitioner contends that Respondent is incorrect because: 1) the appellate court "undoubtedly" reviewed the claim under Florida's "sufficiency of the evidence" standard, which is identical to the federal sufficiency of the evidence standard; 2) his appellate counsel cited to state cases that employed federal constitutional analysis; 3) the claim asserted "terms so particular as to call to mind specific rights protected by the U.S. Constitution"; and 4) "the pattern of facts alleged [were] well within the mainstream of constitutional litigation." (Dkt 22 at pp. 1-4).

The Court agrees with Respondent that Petitioner did not fairly present a federal constitutional violation to the state courts. A petitioner must present each claim to a state court before raising the claim in federal court. "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in state courts." *Henderson*, 353 F. 3d at 891 (citation omitted). "The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding." *Pearson v. Secretary, Dept. of Corrections*, 273 Fed. Appx. 847, 849 (11th Cir. 2008). As *Pearson* notes, federal claims must be presented in a manner that alerts the state court that "the ruling under review violated a federal constitutional right." *Id.* at 849-50. "A state prisoner does not 'fairly present' a claim to a state court if that court must read beyond. . .a brief" to find the federal claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Petitioner's Initial Brief on direct appeal did not fairly present a federal constitutional claim (Respondent's Ex. 2, Initial Brief at pp. 17-23). The brief cited solely to state cases, none of which were decided on federal grounds (Id.). All of the arguments addressed Florida law (Id.). The bases of the arguments were that there was no evidence that the force used against the victim

was during "the course of the taking" of the vehicle, as defined by Florida law, and the State failed to rebut Petitioner's reasonable hypothesis of innocence, as required under Florida law (Id.). Petitioner did not indicate in any way that he intended to raise a federal claim. Therefore, Petitioner failed to exhaust a federal claim because nothing in Petitioner's arguments alerted the state courts to the presence of a federal claim. *See Pearson*, 273 Fed. Appx. at 850.[2] Consequently, Petitioner is procedurally barred from raising Ground One in his federal habeas petition.[3]

Even if Petitioner's claim was not procedurally barred, and could be liberally construed as a federal insufficiency of the evidence claim, the claim would still fail on the merits. When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Id.*; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

As previously stated, to prove carjacking in Florida, "the State must prove: 1) the defendant took a motor vehicle from the person or custody of the victim; 2) force, violence,

---

[2]It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his federal claim because it could have and should have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court). Florida's state procedural rules precluding a second direct appeal, and the time limitations for bringing an appeal, bar Petitioner's returning to state court to present the claim. See Fla. R. App. P. 9.110(b).

[3]Petitioner has not alleged or shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.

assault or putting in fear was used in the course of the taking; and 3) the taking was done with the intent to either temporarily or permanently deprive the victim of his or her right to the motor vehicle or any benefit from it or to appropriate the motor vehicle of the victim to his own use or to the use of someone else." *Lovett v. State*, 781 So. 2d 466, 467 (Fla. 5th DCA 2001) (citing *Fryer v. State*, 732 So. 2d 30, 32, n.1 (Fla. 5th DCA 1999)). Petitioner does not dispute that the State established elements one and three of carjacking. Rather, he disputes that the State proved element two, that the force he used on the victim was "in the course of the taking" of the victim's vehicle. Petitioner argues that the State did not prove element two because the evidence showed that: 1) the force (stabbing the victim) was used to stop the victim's sexual advances toward him in the victim's vehicle; 2) after he stabbed the victim, there was a "break in the chain of events" when Petitioner exited the vehicle without demanding the keys or vehicle; and 3) he took the vehicle, only as an "afterthought," when the victim "abandoned" the vehicle by exiting it, throwing the keys on to the seat, and telling Petitioner to "take the damn truck."

    The evidence adduced at trial, viewed in the light most favorable to the State, demonstrates the following. The victim, who did not know Petitioner, stopped his vehicle and offered Petitioner a ride after Petitioner had waived at him in a parking lot (Resp. Ex. 1, Vol. II at pp. 43-45). Petitioner eventually directed the victim to take him to Arena Road, a dark and secluded dirt road (Id. at pp. 47-48). After they arrived at Arena Road, the victim stopped the vehicle and asked Petitioner whether he was going to get out of the vehicle (Id. at p. 49). At that time Petitioner attacked the victim with a knife, stabbing him in the chest and chin (Id. at pp. 49-50). The victim did not touch or make a sexual advance on Petitioner prior to the stabbing (Resp. Ex. 1, Vol. III at pp. 193-94). Petitioner exited the passenger's side of the vehicle and

partially closed the door (Resp. Ex. 1, Vol. II at pp. 52, 81-83). The victim "panicked" and turned off the vehicle (Id.). The victim then started the vehicle's ignition (Id. at p. 83), but turned it off again because he was concerned that he might stall the vehicle, and afraid that Petitioner would then reenter the vehicle to "finish the job." (Id. at pp. 52, 84). The victim exited the driver's side of the vehicle, threw the keys on to the driver's seat, and closed the driver's side door (Id. at p. 85-86). As Petitioner was reentering the vehicle from the passenger's side, the victim took a five dollar bill out of his wallet and attempted to throw it into the vehicle, but it landed on the ground (Id. at pp. 54, 87). Petitioner then demanded that the victim give him money and an ATM card (Id. at pp. 55, 89). The victim told Petitioner that he did not have money or an ATM card (Id. at pp. 89-90). Petitioner then drove away in the victim's truck (Id. at pp. 55, 90). Approximately one to two minutes elapsed between the time the victim stopped his vehicle at the end of Arena Road, and Petitioner drove away in the victim's vehicle (Id. at p. 55).

In Florida, "'[i]n the course of the taking' means that the act occurred before, during or after the taking of the motor vehicle and that the act and the taking of the motor vehicle constitute a continuous series of acts or events." *Lovett*, 781 So. 2d at 468 n.1 (citing *Standard Jury Instructions in Criminal Cases*, 697 So. 2d 84, 94 (Fla. 1997), § 812.133, Fla. Stat. (1999)). A review of the record demonstrates that Petitioner's use of force and putting the victim in fear was "in the course of the taking" of the victim's vehicle because it was "intertwined with the taking of the [victim's vehicle] in time and place[.]" *See Carter v. State*, 23 So. 3d 1238, 1242 (Fla. 4th DCA 2009). When the victim stopped his car and asked Petitioner if he was going to get out of the vehicle, Petitioner attacked him with a knife. Although Petitioner then exited the vehicle, the victim panicked and shut off the vehicle's ignition. The victim then started the

ignition, but panicked and shut off the ignition again because he was afraid that the vehicle would stall, and Petitioner would reenter the vehicle and again attack him. Therefore, the victim exited the vehicle and threw the keys into the driver's seat. Petitioner immediately reentered the vehicle, demanded the victim give him money and an ATM card, then drove away in the vehicle. These events occurred over a very short period of time.

Viewing the trial evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Petitioner committed carjacking. Therefore, the state appellate court's silent affirmance of Petitioner's carjacking conviction was neither an unreasonable application of controlling Supreme Court precedent nor based on an unreasonable determination of the facts.

Accordingly, because Ground One is procedurally barred and fails on the merits, it does not warrant federal habeas relief.

**Ground Two**

Petitioner complains that the state trial court erred in admitting a knife into evidence. He argues that the knife was irrelevant because it did not tend to prove or disprove a material fact since the knife was not found at the scene of the crime, the victim could not definitively identify the knife as the one Petitioner used to stab him, and there was no evidence that Petitioner ever possessed the knife.

Respondent correctly contends that this issue is not cognizable in a federal habeas proceeding because it involves a matter of state law only. Trial court error as to the admission of evidence is a matter of state law and, therefore, generally not cognizable in a § 2254 proceeding. On habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts possess only limited authority to consider state evidentiary rulings in habeas corpus proceedings. *Burgett v. Texas*, 389 U.S. 109, 113-114 (1967). Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Absent a constitutional violation, the Florida courts are the final arbiter of Florida evidentiary law. *See Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998), *cert. denied*, 528 U.S. 1082 (2000); *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (per curiam).

Even if this claim could be liberally construed as asserting that admission of the knife at trial deprived Petitioner his federal due process rights, Respondent correctly argues that Petitioner failed to exhaust the claim because he did not fairly present a federal constitutional claim to the Florida courts. Petitioner did not assert a federal due process claim in his Initial Brief on direct appeal (Resp. Ex. 2 at pp. 23-27). Rather, he argued that admission of the knife was error and an abuse of discretion under Florida law (Id.). Petitioner therefore never fairly presented a federal constitutional claim to the state courts. Consequently, the claim is unexhausted. *See Picard*, 404 U.S. at 278 ("[T]he substance of a federal habeas corpus claim must first be presented to the state courts."); *Duncan v. Henry* 513 U.S. at 365-66 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

This issue is now procedurally defaulted in the state courts because Florida procedural

11

rules do not provide for a second direct appeal. *See Taylor v. McDonough*, 2006 U.S. Dist. LEXIS 68092 (M.D. Fla., Sept. 13, 2006) (unpublished opinion); Fla. R. Crim. P. 3.850(b), (g). Petitioner has not alleged valid cause to excuse his default in state court, and has failed to show that a fundamental miscarriage of justice will occur if this Court does not reach the merits of this claim. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Consequently, the claim is procedurally barred from federal review.

Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

Petitioner contends that the state trial court erred in denying his request to delete the "duty to retreat" portion of the standard jury instruction on self-defense, and instruct the jury that Petitioner had no duty to retreat. He argues that it was error to deny his request because Section 776.013(3), Fla. Stat. (2005), which became effective on October 1, 2005, provides that "[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony." He further argues that although the statute became effective after the date of the offense,[4] it was applicable to his case because it became effective prior to his February 2006 trial.

Petitioner is not entitled to relief pursuant to Ground Three for the same reasons the Court

---

[4]The offenses were committed on August 14, 2005 (Resp. Ex. 1, Vol. II at pp. 38-39).

12

denied Ground Two, above. First, this issue is not cognizable in a federal habeas proceeding because whether Petitioner was entitled to the requested instruction pursuant to Section 776.013(3), Fla. Stat., involves a matter of state law only.[5]

Second, to the extent the issue can be liberally construed as asserting a federal constitutional claim, the claim is unexhausted and procedurally defaulted because Petitioner failed to fairly present a federal constitutional claim with respect to this issue in his Initial Brief on direct appeal (Resp. Ex. 2 at pp. 27-30). Petitioner's cursory and vague statement in his Initial Brief that he "was denied his due process right to a fair trial. . ." (Id. at p. 30) was no more than a "needle in a haystack," and insufficient to present fairly to the state appellate court a federal constitutional issue. *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (exhaustion requires a habeas petitioner to do more than scatter some makeshift needles in the haystack of the state court record) (citation omitted). *See also Anderson v. Harless*, 459 U.S. 4 (1982) (petitioner's general appeal to a constitutional guarantee as broad as "due process" is not enough to present the "substance" of such a claim to a state court); *Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. Fla. 2003) (petitioner's state court brief which stated that he "was denied due process and a fair trial . . ." was "insufficient to present fairly to the state court the federal constitutional issue" because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause").

Petitioner has not alleged or shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental

---

[5] The Court notes that Petitioner's state law claim fails on the merits because in *Smiley v. State*, 966 So. 2d 330 (Fla. 2007), the Florida Supreme Court held that 776.013(3) does not apply to conduct occurring before its enactment. *Id.* at 337.

miscarriage of justice exception. Therefore, he is procedurally barred from raising a federal constitutional claim with respect to this issue in his federal habeas petition.

Accordingly, Ground Three does not warrant federal habeas relief.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).

Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on February 27th, 2014.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
　　　　　Counsel of Record